SAMUEL NELSON BEEBE *et al.*

*v.*

CHARLES B. SAULTER *et al.*

1. ADMINISTRATION—*sale of land for debts—fraudulent conveyance.* An administrator of an estate, under an order of court, can not sell and convey any interest in lands sold and conveyed by his intestate in his lifetime to defraud his creditors. If he does so sell and convey, his grantee can not maintain a bill to avoid the fraudulent conveyance, because no title passes, for want of power in the administrator.

2. An administrator derives all his power from the statute, and it only authorizes him to sell lands of which his intestate was seized at his death. A conveyance in fraud of creditors being binding *inter partes*, leaves no estate, legal or equitable, in the grantor.

3. SAME—*power of administrator in regard to infirmities in title.* The law must be regarded as settled in this State, that on an application by an administrator

for an order to sell lands of his intestate to pay debts of the estate, the court has no jurisdiction to remove clouds on the title, to settle equities or remove obstructions to the assertion of title, but simply to license a sale of the title of the intestate as he held the same.

4. SAME—*fraudulent conveyance, how avoided.* Any creditor, having the right to enforce payment of his claim against an estate of a deceased person, may file his bill in equity and have any conveyance of the intestate made to defraud his creditors set aside, and then have the land sold by the administrator, to pay his as well as all other debts. Such a creditor has the clear right to avoid such a deed for the benefit of himself and other creditors, so that all may share alike whose claims are in the same class.

WRIT OF ERROR to the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. MILLER & FROST, for the plaintiffs in error.

Messrs. GOUDY, CHANDLER & SKINNER, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Notwithstanding the unusually extended briefs in this case, the points involved lie in a small compass and are governed by a few familiar principles, by no means difficult in their application. It appears that W. T. Beebe, in the month of July, 1846, was largely indebted, if not insolvent; that on the 27th of that month he conveyed the premises in controversy to his children, as it is claimed, for the purpose of hindering and delaying his creditors in the collection of their debts. Afterwards, on the 16th day of May, 1848, he died intestate, and on the 2d day of March, 1853, Leander Douglass was appointed by the Probate Court of Knox county, administrator of his estate. It also appears, that there was proved and allowed in the probate court of that county, a claim for $7150.55, in favor of the Delaware County Bank, which was not paid from the personal assets of the estate.

Afterwards, the administrator applied to the circuit court of Knox county, and at the September term, 1853, thereof, obtained an order authorizing and licensing him to sell the

land which Beebe had thus conveyed in 1846. On the 17th day of November following, pursuant to notice, the administrator sold the lands, and Robert Saulter, Jr., became the purchaser for the sum of $900, and received a deed from the administrator for the land thus sold.

In February, 1855, Saulter filed a bill to have the conveyance by Beebe to his children declared fraudulent as to creditors, and that they should be compelled to convey the land to him. After the opening of defaults to let in defendants to answer, the suggestion of the death of Saulter and revival of the suit in the name of his heirs, numerous continuances and various other steps taken in the cause, a hearing was had in the court below on the 19th day of June, 1872, on bill, answers, replications and proofs, and the prayer of the bill was granted, and defendants decreed to convey to complainants, and on default, that the master convey for them. To reverse that decree defendants bring the case to this court on error.

The vital question upon which this controversy turns, is whether the administrator of an estate may, under an order of court, sell and convey any interest in lands sold and conveyed by his intestate in his lifetime, to hinder and delay his creditors. The bill is framed on the theory that he may so sell, and thereby pass at least the equitable title, so as to enable the purchaser to compel à conveyance from the fraudulent grantee to him, and in granting the relief sought the court below so held. So far as this court has the power to settle this question, it has done so in numerous decisions, in which it is held that by such a sale no title passes to the purchaser, for want of power in the administrator to make the sale. See *McDowell* v. *Cochran*, 11 Ill. 31; *Choteau* v. *Jones*, id. 319; *Alexander* v. *Tams*, 13 id. 226; *White* v. *Russell*, 79 id. 155; *LeMoyne* v. *Quimby*, 70 id. 405. Numerous other cases might be referred to as directly or incidentally sustaining or recognizing the rule, nor are there any cases in our court which announce a different doctrine.

The administrator derives all his power from the statute,

and it only authorizes him to sell lands of which his intestate was seized at his death. We are aware of no well considered case which holds that a person who fraudulently conveys lands to hinder and delay his creditors, retains any title to the lands, legal or equitable. On the contrary, the Statute of Frauds, which was designed to prohibit such sales, only declares such conveyances void as against creditors, purchasers and other persons, but not as to the fraudulent grantor or grantee. As to them it is binding, and passes the title as fully and effectually as if it was *bona fide*. It then follows, that at Beebe's death he was seized of no kind of title, and if so, it is impossible to perceive in what manner the administrator could, even under the order of the court, sell and convey any to a purchaser. The statute conferred, in such a case, no authority on the administrator to ask for, or power on the court to authorize, such a sale.

It has been repeatedly held by this court, and we must regard it as settled, that on an application of this character, the court has no jurisdiction to remove clouds on the title, to settle equities or remove obstructions to the assertion of title, but simply to license a sale of the title of the intestate precisely as he held it. The court has no power to hear and determine that deceased had an equitable title and order it sold, but simply to license a sale of whatever title he had at the time of his death.

The administrator, by obtaining letters, took no title to real estate, whether the title was legal or equitable. He thereby became invested only with a mere naked power, when the contingency provided for by the statute arose, to apply for and obtain leave, in the mode prescribed, to sell the lands of which his intestate died seized. This is the extent of his rights and his powers. But here, his intestate had, previous to his death, conveyed all of his title to these lands by deeds effectual for the purpose as to him, and he had no title or claim of title at the time of his death, and consequently nothing for his administrator to sell, or for the ancestor of complainants to

purchase.   Hence he thereby acquired neither a legal nor equitable right to pursue the land.   A conveyance by Beebe to him could not have authorized him in equity to have the land conveyed to him, because Beebe, after the sale, had no title or right to a conveyance, and could transfer no other or better right to his grantee than he himself held.   It therefore follows, that the administrator sold, and Saulter acquired, nothing by the intended sale.   It then follows, that the court erred in decreeing Beebe's grantees to convey their title to complainant.

This is unlike the case of *Gould* v. *Steinburg*, 84 Ill. 170. In that case, the sale was made under judgment and execution in behalf of a creditor, and as against whom the fraudulent deed was void, and the fraudulent grantor, as to him, had such title as the creditor could sell, and hence the title passed by the sheriff's sale.

In this case, the fraudulent sale passed the grantor's title to the grantee, as against the grantor, his heirs, subsequent grantees with notice, and representatives.   Here, the sale was made by the administrator under an order of court, to pay debts.   Against the administrator the deed was not void but was effective.   Beebe was not seized of the title, nor was he the owner of the land at the time of his death.   Hence he had no title for the administrator to sell, and the purchaser therefore took no title by such a purchase, and having no title he can not have a cloud removed from his supposed title.   Complainant only held a claim against the estate which authorized him, as a creditor, to have the fraudulent deed set aside and the land sold to satisfy the debts allowed against the estate of Beebe.

There would seem to be no doubt that any creditor having the right to enforce payment of his claim against an estate, may file a bill and have the fraudulent conveyances set aside and have the real estate sold by the administrator to pay his as well as all other debts for which the estate is liable.   Such a creditor has the clear right to avoid the deed for the benefit

of himself and other creditors of the estate who hold claims they may enforce.

Our Statute of Wills has provided that all persons having claims of the same class, against an estate, and who shall prove and have them allowed, shall participate and share in the assets of the estate to the extent of their payment, if the means are sufficient, and if not, then to share *pro rata*, except so far as creditors may have acquired specific liens on property of deceased in his lifetime. This provision would be defeated if a creditor who had proved his claim, might, when property is situated as this was, have the administrator make a sale, and become a purchaser at a great sacrifice, as would usually be the case, and then appropriate it to himself, to the exclusion of the other creditors, who have, under the law, an equal lien to his, on the property, as a fund to pay all the debts.

If the conveyance be actually void and not voidable merely, as to creditors, as contended by counsel, then it must be that the fraudulent grantee holds the title in equity as a trust fund for all the creditors of the estate. And if so, no one of them should be permitted to appropriate the fund, by a purchase at a ruinous sacrifice, to his use. This view affords to our minds a strong reason why an administrator should not be permitted to sell property situated as this was. The policy of our Statute of Wills is to protect the rights of creditors of estates, as well as the heirs, devisees and distributees. Real estate thus being a trust fund for the benefit of all the creditors of the estate, the administrator is not, under the statute, authorized, where property is situated like this, to administer it, and appropriate the proceeds, until a court of equity has declared the deeds void, removed the cloud on the title to the trust estate, and freed it from obscurity, thus enabling him to sell and pass a clear title, and realize the value of the property when sold, and thus fully protect the rights of creditors and others having an interest in the estate. This is equitable, just, and effectuates the design of the statute. It prevents the sacrifice of the property, and a purchaser at such a sale from

appropriating the fund to the exclusion of the other creditors and persons interested in the estate.

Saulter was one of the creditors who proved their claims against the estate, or at least a member of the firm that proved their claim, and as he seems to have brought suit in apt time, had the bill been so framed, it would follow, if the evidence warranted it, to have the conveyance from Beebe to his children set aside, and the property then sold for the satisfaction of all claims allowed against the estate, or had this bill been so amended, it may be that such relief could have been granted.

The decree of the court below is reversed, and the cause remanded, with leave to amend the bill if complainant shall so desire.

*Decree reversed.*

Mr. JUSTICE CRAIG, having been of counsel in this case, took no part in its decision.

Mr. JUSTICE DICKEY: On principle, I think that the administrator, when he takes proceedings to sell real estate to pay debts, should be held to act in behalf of creditors, and that as against him, in such proceedings, a fraudulent deed of his decedent should be held void. I think the decisions, in so far as they hold a different doctrine, ought to be overruled.