## HANNAH K. EADS
### V.
## MARY MASON ET AL.

1. ADMINISTRATION—INSOLVENT ESTATE—EQUITY.—Under our statute an execution can not issue on a judgment against an administrator, but the judgment is to be pa d in due course of administration as all other claims against the estate.  Where the estate is insolvent the complainant can not obtain payment in the latter mode and his only remedy is to proceed in equity.

2. ADMINISTRATOR—GIFT—FRAUD.—An administrator can not avoid a voluntary deed of his intestate, nor can he take advantage of a fraudulent conveyance made by his intestate.  Where a gift of bank stock by the intestate to his wife was fraudulent as to pre-existing creditors, they alone can reach it.

3. PARTNERSHIP—CREDITOR PROCEEDING AGAINST ESTATE.—The creditor has the right to proceed against the estate at any time before the Statute of Limitations has run, and a failure to pursue the partnership assets can not be relied upon as a defense when suit is brought against the estate.

3. FRAUDULENT GIFT—DECREE.—The court is of opinion that the transfer of the bank stock to plaintiff in error was a gift from her husband, and as such fraudulent as to his creditors at the time of said gift.  But the stock having been sold and in the hands of an innocent holder without notice, it can not be decreed to be surrendered up, and a personal decree should be rendered against plaintiff in error for the amount realized by her on the sale of the stock, with interest only from the date of the decree, and not from the date of the receipt of the money.

ERROR to the Circuit Court of Knox county; the Hon. A. A. SMITH, Judge, presiding.    Opinion filed August 7, 1885.

Messrs. McKENZIE & CALKINS, for plaintiff in error; that a creditor's bill can not be maintained against a living creditor until execution has been returned *nulla bona*, cited C., D. & V. R. R. Co. v. Town of St. Anna, 101 Ill. 151; Bowen v.

Parkhurst, 24 Ill. 257; Newman v. Willetts, 52 Ill. 98; Moshier v. Meek, 80 Ill. 79; Greenway v. Thomas, 14 Ill. 271; Goembel v. Arnett, 100 Ill. 34.

Messrs. SANFORD & CARNEY and Messrs. WILLIAMS & LAWRENCE, for defendants in error; that the suit was not prematurely brought, cited McDowell v. Cochran, 11 Ill. 33; Bay v. Cook, 31 Ill. 348; Mugge v. Ewing, 54 Ill. 236; Mitchell v. Mayo, 16 Ill. 83; Propst v. Meadows, 13 Ill. 157; Doggett v. Dill, 108 Ill. 560; Choteau v. Jones, 11 Ill. 319.

WELCH, J.   This was a bill in chancery, filed by the defendants in error, to set aside as fraudulent the conveyance by John Eads, deceased, of $2,000 worth of bank stock to his wife, the plaintiff in error.   The defendants in error are unsatisfied creditors of the firm of J. & E. T. Eads, of which firm John Eads, deceased, was a member.   John Eads, on September 1, 1879, gave to his wife, plaintiff in error, ten shares of the capital stock of the First National Bank of Knoxville, Illinois, and on that day transferred the same to her on the stock books of the bank.   On the 18th day of September, 1879, he departed this life intestate.   On the 27th day of October, 1879, plaintiff in error sold and transferred the said ten shares of stock to Charles N. Leffingwell, for $2,000, cash, which she then received.   Leffingwell had no notice of the insolvency of John Eads' estate.   At the time of his death John Eads was a member of the mercantile firm of J. & E. T. Eads, composed of John Eads and his son, Elisha T. Eads.   The property of the firm consisted of a stock of dry goods and the notes and accounts due it, but no real estate.   Immediately after the death of John Eads, Elisha T. Eads, surviving partner, proceeded to settle up the partnership business, as required by statute.   December 3, 1879, J. S. Simpson was appointed administrator of the estate of John Eads, by the County Court of Knox county.   On the same day appraisers were appointed, and on the 12th day of January, 1880, the administrator filed in the county court an inventory of the property, real and personal, of the estate, which

was approved by the court. February 16, 1880, there was allowed individual claims against the estate amounting to $4,367.15, and firm claims amounting to $11,928.91. In April, 1880, the surviving partner paid on the firm claims allowed, not including interest, twenty-five per cent. And in April, 1881, he paid 4.66 (nearly five) per cent. of same allowances, which fully exhausted the partnership assets. The surviving partner had no individual property except such as was exempt from execution. The administrator sold all the undivided property of the deceased, and reported the sale to the county court, and it was approved. On July 28, 1880, said administrator reported to the court the condition of the estate, and was ordered to pay all of the individual indebtedness, which he did. And in pursuance of an order of the county court, he paid on the partnership claims allowed against the estate, January 25, 1881, twenty-five per cent., and on February 27, 1881, twenty-five and one fourth per cent. of the same indebtedness, which payments, together with the widow's specific allowance, costs and expenses of the settlement of the estate, exhausted all the assets of the estate.

There has been paid on the partnership claims allowed 29.66 per cent. by the surviving partner, and 50.25 per cent. by the administrator, leaving unpaid 20.09 per cent. thereof, together with accumulated interest on said allowance since February 16, 1880; after exhausting all of the individual assets, February 27, 1882, the estate was declared insolvent by the county court. On the hearing of this cause in the circuit court upon bill, answer, replication and proof, the court found the transfer of this stock fraudulent, and decreed that plaintiff in error should pay over to the master in chancery, for the use of the partnership creditors, the $2,000 and six per cent. interest from the time of its receipt. From which decree this writ of error is prosecuted.

It is insisted that section 48, chapter 22, Revised Stat., requires that before such a bill could be filed an execution should have been returned *nulla bona*, in whole or in part, and that no such execution having been issued, the bill was prematurely filed. This position is not tenable. In McDowell v.

Cochran, 11 Ill. 33, Justice Treat says: "Ordinarily an execution must issue on the judgment and be returned unsatisfied, before a court of equity will entertain a bill to reach real estate in which the judgment debtor has not such an interest as can be sold on execution. But the present case is an exception to that rule. The complainant has already exhausted his legal remedies without success. Under our statute an execution can not issue on a judgment against an administrator, but the judgment is to be paid in due course of administration, as all other claims against the estate. The estate being insolvent, the complainant can not obtain payment in the latter mode. His only remedy, therefore, is to proceed in equity against the land, and to that on the showing of the bill he is clearly entitled." The allowance of a claim against an estate by the county court is a judgment. Propst v. Meadows, 13 Ill. 157; Mitchell v. Mayo, 16 Ill. 84. If the gift of this bank stock was fraudulent as to pre-existing creditors, they alone can reach it. An administrator can not avoid a voluntary deed of his intestate, nor can he take advantage of a fraudulent conveyance made by his intestate. Choteau v. Jones, 11 Ill. 300.

It is further insisted by the plaintiff in error that the partnership claims could not be proved against the estate until the partnership assets had been exhausted. Justice Craig, in Silverman v. Chase, Ex'r, 90 Ill. 41, says: "We do not regard the position tenable. A partnership debt is joint and several, and the creditor has the right to elect whether he will proceed against the assets in the hand of the surviving partner or against the estate of the deceased partner, as held by this court in Mason v. Tiffany, 45 Ill. 392. The creditor has the right to proceed against the estate at any time before the Statute of Limitation has run, and the failure to pursue the partnership assets can not be relied upon as a defense when suit is brought against the estate." The same rule is announced in Doggett, Ex'r, v. Dill, 108 Ill. 560. These authorities fully establish the right of defendant in error to commence this suit when they did. They were creditors of the firm, and as such, creditors of John Eads September 1, 1879,

Eads v. Mason.

when the bank stock was given plaintiff in error. Their claims were allowed against the estate of John Eads, February 16, 1880. The firm was insolvent, paying only 29.66 per cent. of the partnership debts allowed, and the surviving partner having no property liable to execution, except his interest in the partnership effects. John Eads' estate was insolvent to such an extent that after paying his individual indebtedness, the balance of the assets of the estate, together with all of the partnership assets, paid only 79.91 per cent. These facts were all shown on the hearing.

It was further insisted that defendants in error had no right to file their bill till after the settlement of the estate and the deficit had been thus definitely determined. Their right to sue depended upon the insolvency of Eads at the time of the gift. It might have been more difficult to furnish the proof of such insolvency before than after the settlement, but the settlement in this case having been made before the hearing, conclusively established that fact. Plaintiff in error, during the hearing of the cause, amended her answer, setting up that at the time of her marriage with Eads she was guardian of her three children, and as such had in her hands over two thousand dollars of her wards' money, which she then turned over to Eads, and that he, thereafter, had the exclusive control and management of the said funds, and that he had never paid the same over to said wards or to her, unless the same be regarded as paid by means of the transfer of the bank stock in controversy. That she and her three wards were the owners in fee of the south 18 feet of the north 65 feet of lot 6, in block 7, in Knoxville; that the yearly rental thereof was $100; that for said money she was responsible to her wards; that all of said rent was received and retained by John Eads, and that in 1869 the lot was sold for $450, and the money received and retained by Eads; that she is responsible to said wards for said money, and that she had the right to receive all of said money from John Eads at the time of the transfer of the bank stock to her.

It is shown by the evidence in this case that the plaintiff in error was married to John Eads in 1854. That on March

20, 1851, she made a report to the County Court of Knox county as guardian for said wards, in which she charged herself with $2,282.90, their distributive share in the personal estate of their father. On the 30th of November, 1861, she filed her report as guardian with said county court and settled in full with two of her wards, Elizabeth P. Craig and Henrietta C. Harvey, and there was, at that time, an order of the county court approving such report, and discharging her from further service as guardian for them. On the 22d day of March, 1871, she filed a further report as to her other ward, C. K. Harvey, with said county court, together with his receipt for $850 in full of moneys in her hands as guardian; which report was approved, and an order made by the county court that said guardianship be, and is, hereby declared settled, and that said guardian be, and is, hereby discharged from further service or liability herein.

Plaintiff in error also claims in her answer that she had a homestead in a four-acre tract, and had the right to the rents and profits exclusively; that her husband from the time of their marriage, in 1854, to his death, used and occupied the premises, and that she had a just and equitable claim against him of at least $5,000 for such use and occupancy, and that he was influenced to make the transfer of said bank stock upon the consideration of such indebtedness. There were two children born to her after her marriage to Eads prior to 1861. Under the law Eads was entitled in his own right, to the possession, use and occupation, rents and profits of whatever interest she had in the premises. There is no evidence in this record that anything was ever said by Eads or plaintiff in error as to any indebtedness on his part to her for the use and occupation of the premises. We are of the opinion that there is no foundation in fact, in law, or in equity, for the claim set up in her answer as furnishing a consideration for the transfer of this bank stock to her. In our opinion the evidence conclusively shows that the transfer of the bank stock to her was a gift from Eads, and as such fraudulent as to the defendants in error, who were his creditors at the time of said gift. This stock having been sold, and in the hands

of an innocent holder without notice, can not be decreed to be surrendered up. It having been converted into money by the plaintiff in error, a personal decree should have been rendered against her for the sum of $2,000, the amount realized by her on the sale of the stock, with interest only from the date of the decree and not from the date of the receipt of the money. Her right to this money was never determined against her until the rendition of the decree. The gift was valid and binding as to Eads and his heirs and only fraudulent as to creditors, and the amount of the gift without interest is all that the creditors have a right to receive. The decree, in so far as it allows interest from the time the money was received to the date of the decree, was erroneous.

For this error the cause is reversed and remanded, with directions to modify the decree in conformity with this opinion.