## George L. Dearth v. Jackson Bute et al., Trustees, etc.

1. APPEALS AND ERRORS—*What Necessary to Perfect an Appeal—Who May Assign Errors.*—A person who has neither prayed an appeal nor signed an appeal bond, has not appealed, and one who has not appealed can not assign errors upon the record.

2. SAME—*Where No Errors are Assigned.*—To make an appeal effective, errors should be assigned, and where an appellant does not assign errors, the appeal presents no question for the consideration of a court of appeal.

3. SAME—*Effect of Filing Brief, When the Appeal is Irregular.*—

Where appellees file briefs the court may treat the case as pending, upon a writ of error sued out by the party assigning error, and may disregard the irregularity of an attempted appeal.

4. Same—*Exceptions by One Party do Not Inure to the Benefit of Other Parties.*—One of the parties to a probate proceeding can not have the benefit, on appeal, of exceptions taken by another party.

5. Administration of Estates—*An Administrator Can Not Attack the Acts of the Deceased.*—An administrator takes the estate as he finds it; he stands in the shoes of the deceased, and whatever would bind the property in the hands of the deceased, binds it in the hands of the administrator, who can not attack the acts of the deceased as fraudulent as to creditors.

**Petition in Probate.**—Appeal from the Circuit Court of La Salle County; the Hon. Charles Blanchard, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed September 20, 1897.

Snow & Hinebaugh and McGlasson & Beitler, attorneys for appellant.

Widmer & Widmer, attorneys for appellees.

An administrator takes the title to the personal property of his intestate only as it was held by the intestate at his death, and subject to all liens, trusts, burdens, charges or rights which the intestate imposed upon it in favor of others. The law vests in the administrator no greater rights or better title than the intestate had. Like assignees of bankrupts and insolvents, he takes as a volunteer, and therefore *cum onere*. Choteau v. Jones, 11 Ill. 319; Griffin v. Wertz, 2 Ill. App. 487; Hardin v. Osborne, 94 Ill. 574; Sumner v. McKee, 89 Ill. 127; Kirksey v. Means, 42 Ala. 426; Read v. Gaillard, 2 Desaus. Eq. 552; Sullivan v. Tuck, 1 Md. Ch. Dec. 59.

" An administrator is not the agent or trustee of creditors for the purpose of avoiding a fraudulent conveyance. He is the representative of the intestate, and succeeds to his rights and interests. He stands in his place and is bound by his acts. Whatever is binding on the intestate is binding on his administrator. He is clothed with no greater power than his intestate possessed." Choteau v. Jones, 11 Ill. 319.

Mr. Justice Dibell delivered the opinion of the Court.

George L. Dearth, administrator of the estate of Richard J. Hornick, deceased, began this proceeding July 6, 1896, by filing a petition in the Probate Court of La Salle County against the appellees here, who are trustees for the creditors of the firm of R. J. Hornick & Co., under a composition agreement. The petition sought to compel said trustees to surrender certain notes and accounts to the administrator under Section 81 of the Administration Act. Upon a hearing in the Probate Court, an order was entered finding against the trustees as to certain notes and accounts, and ordering them transferred to the administrator, which order the trustees obeyed. But the court found for the trustees as to a note for the principal sum of $6,325.23, dated June 26, 1896, due four months after date, payable to said trustees as such, and signed by Frank K. Hook and others, and as to said note the Probate Court dismissed the petition of the administrator. An appeal to the Circuit Court from the said order as to said last described note was assumed to have been taken and perfected; the case was tried there *de novo* as to said last described note, and a like order was there entered. An effort was made to appeal therefrom, and a record of said proceedings has been filed here, and errors assigned upon said record.

The administrator did not pray an appeal, and did not sign an appeal bond. John M. Poundstone, a claimant against the estate, filed an appeal bond, executed by himself and a surety, in which he correctly recited that he had prayed for and obtained an appeal to be prosecuted in the name of the said George L. Dearth, administrator. Poundstone has not assigned errors. The assignment of errors is by the administrator alone. This attempt to appeal seems to have been made under section 70 of the Practice Act. Of this section our Supreme Court in Hammond v. The People, 164 Ill. 455, said: " This section and the practice recognized allow one party to use the names of all as plaintiffs in suing out a writ of error, but the right ' to use the names of all said persons, if necessary,' does not in the opinion of the court enable

one party to appeal in behalf of all. Each appellant must for himself file bond, or there must be a joint appeal and bond, or a several appeal by the appellants." Hileman v. Beale, 115 Ill. 355. As the administrator neither prayed an appeal nor signed an appeal bond he has not appealed; as he did not appeal, he can not assign errors as appellant upon the record. Ordinarily only a party to the suit can appeal. Steger v. Steger, 165 Ill. 579. Poundstone is not in any proper sense a party to this proceeding. The administrator was the sole petitioner, and the trustees in the composition agreement were the sole defendants named in said petition. No amendment was ever made or requested bringing any one else into the case. The administrator as a precaution did notify the claimants of the proceeding. The claimants could assist the administrator, but the suit was solely in his name. No doubt claimants could have filed such a petition in the Probate Court, and the petition of the administrator could have been amended so as to make them co-petitioners. John A. Tolman Company and McNeil & Higgins Company, claimants, did file such a petition in the Probate Court after the petition of the administrator was filed. But nothing seems to have been done under the petition of said claimants, and neither of them attempted to appeal from either the Probate or the Circuit Court. If Poundstone, as a person aggrieved by the order of the Circuit Court, was entitled to appeal therefrom under section 124 of the administration act, still to make that appeal effective he should have assigned errors. Where the appellant does not assign errors the appeal presents no question for our consideration. Lancaster v. Waukegan & S. W. Ry. Co., 132 Ill. 492; Davis v. Lang, 153 Ill. 175.

But appellees have filed briefs. In such case the court may treat the cause as if pending upon a writ of error sued out by the party assigning errors, and may disregard the irregularity of the attempted appeal. French v. The People, 77 Ill. 531; De Beukelaer v. The People, 25 Ill. App. 460; Bonner v. The People, 40 Ill. App. 628, and Ferrias v. The People, page 559, this volume. Treating the case then as a

Dearth v. Bute.

writ of error sued out by the administrator from the order of the Circuit Court, we find the record does not contain a single objection or exception by him to the action of the Circuit Court. The clerk's record recites that Poundstone and several other claimants, entered an exception to the finding and judgment of the court. The certificate of evidence recites only that Poundstone excepted thereto. But we think it clear the administrator can not have the benefit of the exception taken by Poundstone or any other claimants. For all that appears from the record of the court below, the administrator may have been entirely satisfied with the order entered. Indeed he did not appeal from the order of the Probate Court. That was an equally irregular appeal by claimant, attempted in the name of the administrator.

If, however, the practice in this class of cases is so far assimilated to the practice in chancery that no exceptions to the action of the court below were required in order to permit the administrator to question the judgment below, we are then brought to the consideration of another proposition. Appellees insist that the transactions out of which the note in controversy arose were binding upon R. J. Hornick; that the administrator takes no greater rights or better title than the deceased had, and therefore said transactions are binding upon his administrator. This was evidently the view taken by the Probate Court, for it found and adjudged that the transactions in question were fairly entered into by said deceased upon a good consideration, and that the administrator was estopped from questioning the rights of said trustees, and from claiming said note. The order of the Circuit Court was more general, and adjudged the trustees entitled to the note without specifying the grounds of its judgment. As the principal position taken by the party assigning errors on this record is that the transaction out of which said note arose and the manner in which the trust was conducted were fraudulent as to subsequent creditors, we are now required to determine whether, under the provisions of section 81 of the administration act, or by virtue

of any other power or duty cast upon the administrator, he can raise that question. It becomes necessary to state the more material facts.

Prior to May, 1893, Richard J. Hornick and John Hornick were partners in a general merchandise business at Grand Ridge, La Salle county, under the name of R. J. Hornick & Co. It seems to be conceded R. J. Hornick was the active partner and alone conducted the business. In May, 1893, they were heavily indebted and made an assignment for the benefit of creditors, pursuant to the statute, and the County Court took jurisdiction thereof. Afterward, on May 29, 1893, R. J. Hornick & Co. entered into an agreement with their creditors, that each creditor should retain or be given a note of the firm, but should take no steps to collect it for three years; that the creditors should select trustees; that J. R. Hornick should convey all his real estate except his residence to said trustees, for sale and division among the creditors; that all outstanding notes and accounts of the firm should be assigned to said trustees, and the proceeds, together with all cash on hand except $1,500, should be divided among the creditors; that the assignment proceedings should be discontinued, and the business of R. J. Hornick & Co. continued as before (that is, by R. J. Hornick), but on a cash basis, and when net profits were realized beyond the immediate needs of the business they should be turned over to the trustees for distribution among the creditors, and the trustees were to have access to the books of the business, and to show its condition, etc. This composition agreement was signed by the individual members of the firm and also in the firm name, and also by ninety-six creditors. A meeting of the creditors was held and they selected the appellees as their trustees. The firm then executed a conveyance of their choses in action and book accounts to said trustees, specifying in said instrument the details of the trust with great precision, and requiring the trustees to turn everything into money, pay the expenses of the trust, pay and discharge all lawful debts owing by said firm May 29, 1893, and to render the overplus, if any,

to the firm. There were many other provisions in said instrument, and among them the following: "It is further agreed by and between the parties hereto, that the said parties of the second part shall have the right at all reasonable times, of access to the books of said R. J. Hornick & Co., together with the right to examine into the manner in which said Hornick & Co. may conduct its said business, and in case said parties of the first part shall willfully and negligently conduct said business so that the assets thereof are likely to be squandered, then said parties of the second part shall have the right to assume control and direction of the said business. In case of the death of the said R. J. Hornick prior to the execution of the trust herein, said parties of the second part shall have the right to conduct said business, or sell the assets of said business for the benefit of said creditors." The contract also required the trustees to give bond in the sum of $20,000, for the faithful performance of the trust. Richard J. Hornick conveyed his real estate to said trustees pursuant to said agreement. At the time this agreement was made, the indebtedness of the firm was about $63,000. At the time of the hearing in the Circuit Court, over $50,000 had been paid upon said debts under said agreement. After the making of said agreement, and the transfers to said trustees, R. J. Hornick conducted the business under said contract, but not on a strictly cash basis. He occasionally bought and sold on credit.

At one time the stock of goods in his hands was destroyed by fire. He used the insurance money to buy another stock. R. J. Hornick died June 16, 1896. A few minutes before or after his death the trustees took possession of said store and stock of goods, pursuant to the provision of said contract above set out. Ten days later they sold said stock of goods to Frank K. Hook for $6,325.23, and took the note in question therefor. At the trial in the Circuit Court it was conceded they sold for an advantageous price, and that the note was good.

It is obvious this arrangement was in all respects valid and binding between these parties. The evidence shows the

plan was devised by R. J. Hornick to prevent his estate being squandered in assignment proceedings without discharging his debts. The contract was beneficial to him. The ninety-six creditors signing the agreement bound themselves not only to dismiss the assignment proceedings, but also not to sue his firm for the debts it owed them for three years. He could not avoid the transaction nor assert its invalidity. We understand it to be the settled law of this State that an administrator takes the estate as he finds it, *cum onere;* that he stands in the shoes of the deceased, and that whatever would bind the property in the hands of the deceased binds it in the hands of the administrator. Some States have statutes authorizing the administrator to attack the acts of the decedent as fraudulent. In other States the courts hold the administrator represents the creditors and may assert their rights, and so may assail a transaction for fraud of his decedent. But in many other States, and among them Illinois, the administrator is not permitted to assail or impeach the acts of his intestate. 1 Woerner's American Law of Administration, Section 296. Most of the cases in Illinois relate to real estate, but the principle laid down is broad and general, and applicable to personalty. Thus in Choteau v. Jones, 11 Ill. 300, the court said: "The former" (the heirs) "could take no greater estate than their ancestor had; the latter" (the administrator) "could assert no greater right than his intestate could have done. An administrator is not the agent or trustee of the creditors for the purpose of avoiding a voluntary conveyance. He is the representative of the intestate, and succeeds to his right and interests. He stands in his place and is bound by his acts."

In Alexander v. Tams, 13 Ill. 221, this language was used by the court: "The record shows that Wilbourn" (the intestate) "repeatedly declared that he paid nothing on the land" (which declaration was in fact untrue); "but that all was paid by Alexander. These declarations would have prevented him from recovering back the money he advanced, and they are equally binding on his administrator." In

Dearth v. Bute.

White v. Russell, 79 Ill. 155, a member of an insolvent firm withdrew money from the firm, and for the purpose of placing it beyond the reach of the creditors, bought a lot with said money and had it conveyed to his wife. After his death the creditors sought to reach it, and it was urged that was the province of the administrator. The reply of the court was: "Where a debtor in his lifetime makes fraudulent conveyances to hinder or delay his creditors, such conveyance, though void as to creditors, is binding on his heirs and representatives. Neither his heirs, executors or administrators, can maintain a bill to set aside the conveyance, as it is binding on them." Beebe v. Saulter, 87 Ill. 518.

In Sumner v. McKee, 89 Ill. 127, speaking of a mortgage on chattel property which was void as to third persons, the court said that the widow, heirs and administratrix "stand in the shoes of the deceased, and are his representatives, and concluded by all lawful acts and contracts he may have entered into or performed." In Hardin v. Osborne, 94 Ill. 571, the court said that the executor holds the property subject to all liens, claims or equities, precisely as did the testator. The law vests the title to personalty for the benefit of creditors in an administrator, and yet he only takes it as it was held by the intestate." So in Griffin v. Wertz, 2 Ill. App. 487, it was said: "The administrator takes the personal property of the deceased as his representative and acquires no better right than he had." In Eads v. Mason, 16 Ill. App. 545, this court had before it an appeal brought by certain creditors of a deceased debtor, who, while insolvent, had given certain bank stock to his wife. We there said: "If the gift of this bank stock was fraudulent as to pre-existing creditors they alone can reach it. An administrator can not avoid a voluntary deed of his intestate, nor can he take advantage of a fraudulent conveyance made by his intestate." In Ellis v. Petty, 51 Ill. App. 636, where it was claimed property had been placed in the hands of the appellee by her husband for the purpose of avoiding the payment of his debts, the court said: "The transfer might be impeached by the creditors if it was a fraud upon them, but it could not be by the administrator."

If further reason were needed why the administrator should not be permitted to have the relief here sought, it will readily occur, upon reflecting what creditors could be heard to assail this composition agreement as fraudulent. The transaction clearly was not fraudulent as to pre-existing creditors who were parties to the arrangement. The evidence shows claims to the amount of about $13,000 have been allowed by the Probate Court against the estate of R. J. Hornick, deceased. Among them is at least one who was a creditor before the composition agreement was made. As petitioner did not show his name, and has not set out in the certificate of evidence the ninety-six names signed to the composition agreement, we assume this creditor signed it. If the administrator succeeds in reaching this note in the hands of the trustees, this claimant will receive his share of the note divided *pro rata* among claims amounting to $13,000, instead of his share divided *pro rata* among claims amounting to $63,000 principal, as he agreed, and that on the ground that the transaction was fraudulent, notwithstanding he was a party to the transaction and has received dividends thereunder to the amount of eighty per cent. Again, the transaction could only be assailed as fraudulent by subsequent creditors who were deceived by the appearances into supposing that R. J. Hornick individually owned the property in his charge, and who extended credit to him on the faith of such appearances. It will hardly be claimed this arrangement could be fraudulent as to subsequent creditors who dealt with R. J. Hornick and extended him credit with a full knowledge of all the facts. The claimant, who sought to be appellant here, represents only a few hundred dollars out of the $13,000 of claims filed. There is no proof in this record a single subsequent creditor was deceived, but if some were, others may not have been. Even if the claimant who sought to appeal has some title to avoid the transaction, it does not appear that the other claimants who have not intervened, and who hold over $12,000 of the claims against the estate, have any right whatever to attack it. To turn this note over to the administrator would be to set

the transaction aside, not only for the benefit of such creditors, if any, as were deceived and defrauded, but also for the benefit of the creditors who may have dealt with Hornick with a full knowledge of all the facts, and also for the benefit of the claimant who was a creditor prior to this transaction, and a participant therein. Obviously, the deceived creditors, if any, are the only ones to whom relief can be granted, and not the administrator, who must make *pro rata* division of all he receives among all creditors having claims allowed, even if they were neither deceived nor defrauded.

The fourth assignment of error is: "The court erred in rendering judgment against appellants for costs." The judgment was, "that said appellants pay the costs of this proceeding." As above stated, the administrator did not appeal from the Probate Court to the Circuit Court. The judgment is not in terms against the administrator, and we are satisfied it was not intended to be against him, but against the claimants who had attempted to appeal from the Probate Court in his name. As the judgment is not against the administrator, the error is not well assigned. Whether the Circuit Court had such jurisdiction of said claimants as to enable it to render a valid judgment against them for the costs, is a question which does not concern the administrator, who alone assigns error on this record. Judgment affirmed.